Good afternoon. The excuse me, the next case called Good afternoon, your honors. My name is Autumn Renee Fincher, and I'll be appearing pro bono on behalf of Gallon Mack today. Now on appeal, we raised two issues. The first being that the state failed to prove Mack guilty beyond a reasonable doubt of aggravated criminal sexual abuse. And two, his trial counsel was ineffective for opening the door to otherwise inadmissible and incompetent hearsay testimony. Unless your honors have any questions about the second issue, I'll be confining my argument to the first issue, the reasonable doubt issue today. Now, even viewing the light in the evidence, the light most favorable to the state, as we must, J.D.'s testimony is too improbable and too unlikely to sustain Gallon Mack's conviction beyond a reasonable doubt. First of all, it's physically unlikely that the scenario J.D. described actually happened. Now what we have here is a wild sleeper. We have somebody through uncontroverted testimony thrashes about her bed at night, throwing pillows on the floor, tossing blankets on the floor, to the point that she cannot sleep in a bed with the other girls. The two other girls who were bigger than J.D. have to share a twin bed because J.D. must sleep alone because she's such a wild sleeper. And that morning, she was balled up in a fetal position on the bed facing a wall. It's under those circumstances that J.D. says that Mack came in, and according to J.D.'s scenario, he would have had to walk into the room, lift up the blanket that was on top of J.D., slip his hand in between her legs, rub her vagina in a circular motion, all the while not actually waking her up. Now this would have been difficult at best, and in truth, it's highly improbable that it physically could have happened that way. Is it not a question for the prior effect? It is, and it was held against my client, but that doesn't mean that that determination was reasonable. We're saying that that determination was based on evidence that was so improbable, so physically impossible, that it's not one that this court should affirm. This court should not put a rubber stamp on this conviction because this evidence was incompetent. It did not sustain his conviction. Do you use the term evidence? And do you think that this case falls within the ambit of the Supreme Court's requirement that there be some corroborating evidence? To the extent that there is no corroborating evidence here. Yeah, do you think that this case requires something more? In other words, assuming that the jury found this to be true and that's all you have, is that really enough, just one person's word? It can be enough, but in this case, it's not enough because there was testimony from an independent witness that actually rebuts her statement, the J.D. statement. But I guess what I'm saying is I don't understand how you can convict someone just, like I can say, you shot this guy next door. Is that enough? I disagree. I do not think in this case that Gallen-Mack should have a sex abuse conviction and be on a criminal sexual registry for the rest of his life based on the confused testimony of a girl who was startled in the middle of her sleep. And I completely agree. There should be some corroborating of it. There's no physical evidence in this case. There's no testimony from another witness. Would you talk about the witness that you say does not corroborate her testimony? I'm sorry. Oh, yeah. T.N. King. T.N. King, now, she was sleeping in the other twin bed with Sierra, and she testified at trial that she heard J.D. scream, and she woke up immediately, as you would if you would hear a 15-year-old girl scream in the middle of the night. And when she woke up, she did not see Gallen-Mack standing above J.D. Now, J.D. testified that when she screamed, Gallen-Mack's hands were actually between her legs and that he was standing above her. So T.N. King's testimony refutes that of J.D. and, in fact, supports that of my client, that he was on his way out of the room because he had finished exactly what he came in that room for, to put the blanket over J.D. Also, I find this pretty important, that T.N. King did not believe that anything had actually happened. In fact, when she heard her friend scream, she turned over, said, quit playing, and tried to go back to sleep as she saw Gallen walking out of the room. I'm not sure how that refutes her testimony, though. How T.N. King refutes J.D.'s? Yes. The placement, where Gallen-Mack was standing. So J.D. says, I woke up as Gallen's hands were in between my legs, and he was holding my vagina, and I screamed immediately. Gallen then split his hands out from underneath, from between my thighs, and began to walk out of the room. Now, T.N. King testified at trial that when J.D. screamed, T.N. King looked up and saw Gallen standing at the foot of her bed. Her bed. Oh, T.N. King's bed, I'm sorry, the bed that T.N. King was sleeping in. Okay. Which were several feet apart. So if anything, that means that J.D. screamed as Gallen was leaving the room. Not while Gallen's hands were still between her legs, as J.D. testified. Sorry, so many she's. As J.D. testified. Okay. So not only are we saying that it's physically unlikely this could have happened, and that hurt that J.D.'s testimony is rebutted by the testimony of T.N. King, we're also saying that it defies common sense that this would happen. Why would Gallen-Mack, with no prior criminal history for a sex offense, wait until he was 43, I'm sorry, 43 years old, to commit his first sex offense? And on the friend of his girlfriend's daughter under really risky circumstances. It doesn't make sense that Mack would leave his girlfriend awake in the room he just shared with her, where she could hear everything, slip into the girl's bedroom, pass the other two girls, T.N. King and Sierra Covington, and molest J.D. It's even more difficult to believe that Mack would have even thought he had time for this. He told his girlfriend, I'm just going to go to the bathroom and wash up. That's a couple minutes. It leaves Gallen a couple minutes for him to walk into the girl's bedroom, tiptoe past the other girls, slide his hands between J.D.'s legs, ratify himself sexually after just having had sex with his own girlfriend. Which she denied, I believe. She didn't deny, she didn't testify, too. She didn't add that detail. Oh, so she was asked, and I thought she was asked and said no, they had not just had sexual intercourse. I believe she wasn't asked. I can mention it on rebuttal, for sure. But she didn't mention either way, for sure. I was part of a jury. I can check and double check. But I don't think she denied, I think she just said I didn't, you know, just didn't offer that detail. It just simply doesn't make sense that then he would think, that Gallen would think that he could then just get back into bed with his girlfriend. We've never said, though, that J.D.'s a liar. We're not calling her a liar. She's a 15-year-old girl who was startled, and that's really easy to see how she was startled. She wakes up in a bed that's not her own, sees a grown man walking away from her. She probably felt the blanket brush against her that Gallen threw back on the bed, and it's easy that she could have thought the worst. The next thing you know, she's having to explain. Why would she think the worst, though? It's not logical to me that somebody would just wake up and think that they were molested by a man. You know, it just doesn't seem logical that that's the first thing they would think of. As a 15-year-old girl, the first thing they think of is, I've just been molested. I agree. That is a strange conclusion to make. But her own hands, according to the record, her own hands were between his eyes. She could have been dreaming. There are plenty of explanations for possibly how she came to that conclusion. We don't know her history. We don't know a lot of details. But, you know, the jury can't have filled those in for her, you know. And on appeal, we can't fill those in. We're just saying that it's so improbable, physically impossible, defies common sense. It's rebutted by the other testimony that this actually occurred the way it did. And not only that, Gallen offered himself a very plausible explanation for why he was in there. And it's been consistent since the moment that Jane was removed. And what was that? Because I thought there were two different explanations. You might be—can you go ahead? Oh, I'm sorry. The pillow. He said I was coming in to get a pillow. First I was moving the pillow. I think he was just as startled by her scream as anyone else was. And when he said I was getting a pillow, who's to say that he isn't saying I was moving her pillow? Because that's another thing that he did. He was pushed up against the wall. But I'm looking at a police brief, and it says that Rice, I guess Officer Rice, stated that the defendant told him that he went into the bedroom because he thought J.D. was cold, and her bed cover had fallen to the floor, and he picked it up and covered it. And it was re-testified to at trial. And he told Sierra I was getting a pillow. He could have been saying, to me, those are not two different things, because he moved the blanket and moved the pillow while he was in there. Thank you very much. Counsel? Thank you. May it please the Court. Autumn Whitney-Atkins for the State of Illinois. The sum of the defendant's first argument on appeal is essentially that this court should supplant the jury's judgment for the defendant's self-serving own, because the evidence here was not scant. It certainly was not insufficient, and the victim's account hardly plausible. I'd like to go through the facts again. I know that the defendant just went through the facts, so I'm sorry for the redundancy, but I do have a point. So the victim and Sierra Covington were best friends. And up until the sexual assault, the victim went over to Sierra Covington's home nearly every weekend. She stayed the night there. So on April 22, 2012, Sierra Covington, the victim, and T and P were all, had fallen asleep in Sierra Covington's bedroom. They had spent the night together. So the early morning hours of April 22, they fell asleep. And the victim is in a bed by herself but in Sierra's room with the other girls, and she feels someone touch her vagina. She's faced towards the wall. She turns around, and she sees the defendant easing his hand from underneath the blanket, and then she screams. Now, what, under your scenario, the way you've described it, it sounds like it took minutes. Like there was a lot of time involved. Was he really touching her vagina? Is that what she says? Yes. I mean, that's a whole lot different than other places on the female human body. So, I mean, that sounds more implausible to me than other versions. I mean, was that her claim? I thought it was that he was rubbing her in a different place. No. What is the allegation? It's that he was rubbing her vagina over her clothes. And I guess to get this correct, you find it implausible because it would take so long or? Well, your vagina is located in a place that's a little difficult to get to. It's not like just. Sure, sure, sure, sure. And it's over her clothes? Right, yeah. It took some maneuvering, but that's why she woke up. That's why she woke up and screamed because it is alarming and it does take some maneuvering. And, you know, the defendant says that she was this wild sleeper, but there's a difference between being a wild sleeper and a light sleeper. She testified that she, you know, sometimes did sleep fairly deeply. If you're deep asleep, you might not feel somebody maneuvering their hand and touching that area of your body. But she eventually did feel it. It seems like there's some different versions of what she did say. One is that she woke up after it was happening or simultaneously when it was happening. And another is that she actually felt it. I think that's the defendant's characterization is that she was asleep while she was being touched. And I think that at the trial, the defendant's trial counsel tried to lead her into saying that she was actually asleep. But she was very clear about her testimony. Her testimony is that she was asleep until she was touched. She was sleeping and then she felt that he was touched. I mean, I think the confusion comes more from trial counsel's phrasing of questions and from the defendant's appellate brief. Not truly her testimony, her answers. So she, this took a tremendous amount of courage. This was her best friend's mother's fiancé. And she was hysterical and crying. Several witnesses testified that she was hysterical and crying. And this is corroborative evidence, the disposition and demeanor of a sexual assault victim. She immediately reported the incident, which is also, the law states, is corroborative evidence, prompt testimony. Her reaction was very emotional. She immediately screamed. She screamed so loud that she woke both Sierra and Tian. And as far as the physical impossibility, it wasn't physically impossible. It simply required that she not immediately wake up. But she did eventually wake up. And as far as another point the defendant made was that it was physically impossible because the victim's hands were in between her thighs. But that was not her testimony. Her explicit testimony were that her hands were above her head. And actually, the fact that she was asleep does not make the defendant's act more implausible. It actually makes it more probable because that was the only time that he could sexually assault her without anybody knowing. It was the only time that he could sexually assault her, presumably, without her knowing. And as far as the common sense aspect of the victim's account, that she probably misread the defendant's actions or misunderstood what was happening to her, you don't mistake somebody touching your vagina. This was a traumatic violation. This isn't like when you get the date wrong, when you're writing a check, or you mistake your order at a drive-thru. This was a trauma. It's not the kind of thing you misunderstand. And to claim that she misunderstood what was happening to her is just so wildly unreasonable. So the test is whether, viewing the evidence in the light most favorable to the state, any trial or fact could have found that the state had proven the defendant guilty beyond a reasonable doubt. It was up to the jury to decide whose version of events it believed. And it believed the victim's. It met its burden. So for those reasons, we would ask that this court affirm the defendant's conviction for aggravated criminal sexual abuse. Thank you. Thank you, counsel. Counsel? Thank you. We all know the standard of review on a case. Counsel, my opposing counsel, just reiterated it. But just because a jury accepted a story, an uncorroborated story, doesn't mean that it was reasonable. The only evidence the state presented in this case, J.D.'s testimony, was, one, physically improbable. Two, defies common sense to such a degree that it is implausible. And third, it's rebutted by independent testimony. What would be the motive for a woman to do that? We've never claimed that she had a villainous motive or, you know, some nefarious motive. But that's my point. Why would somebody do that if it didn't happen? She's confused. She was in deep sleep, as my counsel, as my opposing counsel mentioned. She was in a deep sleep. She could have been in deep sleep. She could have. Well, even if you're in a deep sleep, if somebody has their hand in your vagina, that would wake you up. That's true. It'll wake you up. I mean, it is a pretty violent act, as Ms. Adkins indicated. But when she woke up, when J.D. woke up, she might not have known where she was, what she was doing, what anybody was doing. And the only testimony we have that is to what was going on in that room that is not from J.D. or not from Gallin is that T&P testified that Gallin was leaving the room. And J.D. testified that he either, at some points in the record she says that she woke up when he started touching her, and then at other points he was in the midst of touching her when she screamed, when she awoke and screamed. But it's really clear from T&P's testimony that he had already started to leave the room when she screamed. So it's entirely possible that she had just been scared, been scared. She wasn't in her home. This was practically a stranger to her. I mean, she spent the night there all the time, practically a stranger. But the fact that she spent the night there all the time just shows again why this defies common sense. That Gallin asked, why this morning, why this morning did he pay to molest her? She was there all the time. Why this morning? Why when he had just a few moments to walk to the washroom, whatever time it would take him to get to the washroom, as we said, he told his girlfriend, I'm going to go do, to get back. Don't you think the girlfriend would kind of wonder where he went if he was gone for 20 minutes? As Your Honor pointed out, this is going to take some time. The placement of her legs and the placement of her anatomy was such that this would have taken some time, especially to do it in such a way that Gallin would not have awoken her. I'm sure that if somebody was committing this act, the last thing he would have wanted to do was awaken his victim. It's precisely why he took the, you know, like someone would take advantage of that opportunity. She was asleep. But Gallin didn't have this opportunity. Gallin didn't take it. All Gallin was doing was trying to cover her up with a blanket. And so because Gallin offered a plausible explanation and because the testimony of the complainant was implausible at best, we ask that this court reverse Gallin Mack's conviction outright. Thank you. Thank you, counsel. We appreciate the brief start, counsel. The court is under advisement. Thank you.